Stephanie SUTHERLAND, on behalf of herself and all others similarly situated, Plaintiff,

v.

ERNST & YOUNG LLP, Defendant.

No. 10 Civ. 3332(KMW)(MHD).

United States District Court, S.D. New York.

March 6, 2012.

Max Folkenflik, Folkenflik & McGerity, New York, NY.

Leon Marc Greenberg, Leon Greenberg, Las Vegas, NV, for Plaintiff.

Catherine A. Conway, Gregory W. Knopp, Akin Gump Strauss Hauer & Feld LLP, Los Angeles, CA, Daniel L. Nash, Joel M. Cohn, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, Estela Diaz, Akin Gump Strauss Hauer & Feld LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

MICHAEL H. DOLINGER, United States Magistrate Judge.

In the wake of the District Court's most recent decision reaffirming its earlier denial of defendant's motion to compel arbitration of the putative class representative's wages-and-hours claim (*see* Op. & Order dated Jan. 13, 2012), defendant Ernst & Young has moved to stay all proceedings in this case during the pendency of its appeal of that ruling. Plaintiff opposes. For the reasons that follow, the motion is granted in part.

The determination whether to enter a stay pending an interlocutory appeal is within the discretion of the District Court. *Nken v. Holder*, 556 U.S. 418, 129 S.Ct. 1749, 1760, 173 L.Ed.2d 550 (2009). The four oft-cited criteria are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 1761 (citation omitted). While stated in these terms, the test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal. Thus, if it shows "serious questions" going to the merits of its appeal as well as irreparable harm, the stay may be granted if the balance of hardships "tips decidedly" in favor of the moving party. *See, e.g., Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–38 (2d Cir.2010). Similarly, the stronger the showing that the movant makes as to its likelihood of success on the merits, the less compelling need be the movant's demonstration of harm. *See, e.g., Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir.2002) ("The

probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay.") (citation omitted). Nonetheless, the movant cannot prevail by showing a mere possibility of success or of harm. *Nken*, 129 S.Ct. at 1761.

The first two questions—addressing likely success and irreparable harm to the movant—are the most salient concerns. *Id.* We accordingly address those first.

■ Defendant asserts that it is likely to prevail on appeal, but offers little basis to justify this contention. The governing standard, as most recently elucidated by the Second Circuit in *In re American Express Merchants' Litig.*, 667 F.3d 204 (2d Cir.2012), authorizes invalidation of an agreement to arbitrate if the agreement bars class arbitration and the plaintiff demonstrates that pursuing non-class arbitral proceedings to assert a federal statutory claim would be financially or otherwise unfeasible. For reasons noted at length by the District Court in this case, plaintiff has made a compelling showing that requiring her to pursue a non-class proceeding in arbitration to enforce her FLSA claim would be financially impractical in view of the small amount of the underpayment that she claims, the expense of retaining an expert and the fees necessary to ensure legal representation. *See Sutherland v. Ernst & Young LLP*, 768 F. Supp.2d 547, 551–53 (S.D.N.Y.2011).

Defendant argues that it will prevail on appeal primarily because plaintiff has not made a sufficiently clear showing of unfeasibility in view of the assertedly rigorous standard recognized in the *American Express* decision. We need not rehash the reasoning of the District Court in denying reargument to defendant on its motion to compel arbitration. That decision suffices to demonstrate the basis for our conclusion, in agreement with Judge Wood, that plaintiff's proffer on the issue of financial unfeasibility was more than adequate. (*See* Jan. 13, 2012 Op. & Order at 4–6).[1]

Defendant alternatively suggests that it will likely prevail because the Second Circuit's *American Express* decision will probably not survive Supreme Court scrutiny or, perhaps, *en banc* review.[2] In this regard, it suggests that the *American Express* decision is inconsistent with Supreme Court precedent. Thus defendant contends that *American Express* misreads the Supreme Court's decision in *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)[3], and conflicts with other precedent

---

**1.** An additional reason to question defendant's prospects on appeal is the recent decision of the National Labor Relations Board to the effect that imposing a non-class arbitration provision in a labor contract violates section 7 of the National Labor Relations Act and is unenforceable under the Norris–Laguardia Act. *D.R. Horton, Inc. and Michael Cuda*, NLRB Case No. 12–CA–25764 at 4, 5, 2012 WL 36274 (Jan. 3, 2012). Although that agency decision has not met with universal approval by the courts in the short time since its issuance, *see, e.g., LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590, *6 (S.D.N.Y. Jan. 13, 2012) (declining to follow *Horton*); *Palmer v. Convergys Corp.*, 2012 WL 425256, *3 n. 2 (M.D.Ga. Feb. 9, 2012) (acknowledging *Horton* in employment application

waiver case but finding that it did not "meaningfully apply to the facts of the present case"), it adds a further question that defendant must address on its recently filed appeal.

**2.** We were advised at oral argument that defendants in *American Express* had requested *en banc* reconsideration of the panel's decision. (Feb. 27, 2012 Tr. 5).

**3.** In *Green Tree* the High Court recognized that a non-class arbitration agreement could be set aside if its implementation would be unfeasible for a party who is seeking to assert a federal statutory claim. As defendant notes, the Court there focused on the financial burden imposed by costs unique to the arbitral

which is generally highly protective of arbitral agreements. (*See* Def.'s Stay Mem. of Law at 18–19). This is pure and unadulterated speculation, and in any event we are bound to assume the validity of current Second Circuit precedent absent subsequent dispositive Supreme Court precedent to the contrary, which defendant fails to cite because there is none.

All of this said, we also do not conclude that defendant's appeal is necessarily futile, that is, that it fails potentially to raise substantial issues. In this respect it is fair to note that the proffer made by plaintiff to demonstrate non-class unfeasibility is not as overwhelming as that presented in *American Express*.[4] In addition, defendant represents that it will stipulate that plaintiff, if she prevails in arbitration, will be entitled to reimbursement of expert fees up to $33,500.00, which is the amount that plaintiff's expert estimated before the District Court would be the fee generated by his participation in a non-class proceeding on behalf of Ms. Sutherland.[5] If so, that would potentially somewhat lessen the financial burden that plaintiff would face if she had to pursue her claim on her own, although of course her eligibility for such an award would depend on her success in the arbitral forum, an uncertainty that the Second Circuit noted in *American Express* as undercutting the argument that resort to single-plaintiff arbitration was practical. *See American Express*, 667 F.3d at 218–19.

In short, we determine that defendant has a non-frivolous appeal, but one that is fraught with problems in light of governing precedent and the state of the record. At best, then, it raises issues that are potentially substantial but hardly promising.

■ As for defendant's assertion of irreparable harm, it amounts to the argument that, absent a stay, "Ernst and Young will be deprived of the arbitral forum for which it bargained, and will be forced to spend substantial time and resources opposing class certification, and, if a class is certified, litigating a class action", thus depriving it of its bargained-for guarantee of "arbitration of individual claims only." (Def.'s Stay Mem. of Law at 19). Although plaintiff notes that if defendant prevails on its arbitration argument, it will be afforded that remedy regardless of what occurs in the trial court, defendant responds that such a result would nonetheless deny it "the advantages of arbitration—speed and economy." (Def.'s Reply Mem. of Law at 8 (quoting *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir.1984))). This point was ech-

---

process, whereas in *American Express* the circuit court was looking to expenses that would be imposed either in a court proceeding or in arbitration if class status were denied. *See* 531 U.S. at 90–92, 121 S.Ct. 513.

**4.** In *American Express*, the plaintiffs offered evidence that the cost of hiring an expert by an individual plaintiff in arbitration would likely range from several hundred thousand dollars to over $1 million. *See American Express*, 667 F.3d at 217–18. In contrast, the amount of damages, even treble damages, would be far less-not nearly enough to cover the cost of the expert. Furthermore, the fee-shifting provisions of the Clayton Act were found inadequate given the low expert-witness reimbursement rate. *Id.* at 218–19.

**5.** Defendant's point takes its significance from the fact that, even if plaintiff prevailed in arbitration, she would not necessarily be entitled to an award of expert fees. (*See, e.g.,* Jan. 13, 2012 Op. & Order at 4–5) (noting that expert fees may be "largely not compensable because 'when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of 28 U.S.C. § 1821(b),' which is currently $40 per day.") (quoting *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.*, 554 F.3d 300, 318 (2d Cir.2009)).

oed by defendant's counsel when he stated that "[t]he principal harm ... is [that] we had an agreement with Ms. Sutherland that her claim would be arbitrated in a fast and efficient manner. We are being denied that opportunity .... That's the principal harm." (Tr. 23).

This argument requires some parsing. There is no dispute that one motive for resorting to arbitration is that it is generally assumed to be a speedier and less expensive alternative compared to civil litigation in the courts. *See AT & T Mobility v. Concepcion,* —— U.S. ——, 131 S.Ct. 1740, 1749, 179 L.Ed.2d 742 (2011); *Nat'l Broadcasting Co. v. Bear Stearns & Co.,* 165 F.3d 184, 190–91 (2d Cir.1999) (noting "efficiency and cost-effectiveness" of arbitration). Moreover, the preclusion of class arbitration was presumably designed, at least in part, to simplify and speed the arbitral process, as well as perhaps to make it less attractive to employees for resolution of some disputes. That said, defendant fails to demonstrate that granting a stay will affect in any way the speed with which Ernst & Young will be afforded access to an arbitral panel or the speed and efficiency of that arbitral proceeding. Whether defendant obtains an order compelling arbitration will be determined by the appellate courts—the Second Circuit in the first instance and the Supreme Court ultimately. The pace of that appellate process will not be affected by the grant or denial of a stay of trial court proceedings.

■ Ultimately, then, defendant's claim of irreparable harm reduces to the assertion that allowing court proceedings to continue during the pendency of its appeal will cost it money and what its counsel referred to at oral argument as "disruption". (Tr. 27). In response, plaintiff relies heavily on a set of decisions that have held in various settings that the expense of litigation is not, in itself, irreparable harm for injunctive purposes. (*See* Pl.'s Opp'n at 10–11 (citing *Emery Air Freight Corp. v. Local Union 295,* 786 F.2d 93, 100 (2d Cir.1986); *Bruce v. Martin,* 680 F.Supp. 616, 621 (S.D.N.Y.1988); *World Wide Plumbing Supply Inc. v. DDI Sys. LLC,* 2011 WL 5024377 (E.D.N.Y. Oct. 20, 2011)).)

We are not persuaded that this aspect of the harm cited by defendant is not cognizable in the current context. None of the cases cited by plaintiff involved denials of arbitration, much less non-class arbitration, and hence they do not directly address defendant's point—that failure to grant a stay may irrevocably deprive it of at least a portion of that which it unquestionably bargained for, a proceeding designed (at least in theory if not always in practice) to avoid the far greater expenses and other burdens attendant on class litigation (or even class-wide arbitration). We view that potential loss as at least cognizable, regardless of how we view its severity. *See, e.g., Alascom, Inc.,* 727 F.2d at 1422; *Cendant Corp. v. Forbes,* 72 F.Supp.2d 341, 342 (S.D.N.Y.1999); *see also Del Rio v. Creditanswers, LLC,* 2010 WL 3418430, *4 (S.D.Cal. Aug. 26, 2010).

As for plaintiff's potential harm from the granting of a stay, it appears to be less than overwhelming and fully reparable. As her counsel candidly conceded at oral argument, the only harm to her from a stay is delay in achieving a final resolution of her claim, and that harm may be fully remedied by an award of pre-judgment interest. (Tr. 58–59). It bears emphasis in this respect that plaintiff is not contending that the delay in receiving an award will cause her additional practical harm, as might be the case if she were currently in extremely straitened financial circum-

stances.[6]

Since defendant demonstrates only serious issues going to the merits, we are required to compare the parties' respective claimed harms that would flow from the granting or denial of a stay. Given the paucity of the cited harm—none irreparable—to plaintiff and the cognizable, if arguably limited, irreparable harm to defendant, we view the injury to defendant of the loss of a significant part of the benefit of its bargain as notably outweighing the frustration to plaintiff of a delayed resolution of her claims.

■ That still leaves us with the consideration of the public interest. Both the FAA and the FLSA can be viewed as freighted with public-policy considerations, and deserving of enforcement to the extent that they do not conflict. How to resolve that question, however, is a matter now for the appellate courts that will review the District Court's decision. We discern, however, two policy concerns worthy of our attention in the present context. First, considerations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary. *See, e.g., Payne v. Jumeirah Hosp. & Leisure (USA) Inc.,* 808 F.Supp.2d 604, 604 (S.D.N.Y.2011) (finding further proceedings in that forum would be "unproductive and incompatible with judicial economy"). This concern counsels in favor of granting a stay, since the appellate resolution of the arbitration issue may be dispositive of this case. Second, however, resolution of the pending class-certification motion—which has been fully briefed—could itself conceivably moot the issue that will now be briefed on appeal.[7]

■ Given these considerations, we conclude that the optimal resolution here is to stay discovery in this case pending resolution of defendant's appeal[8], conditioned on (1) defendant applying to the Second Circuit for an expedited briefing schedule and (2) defendant's stated waiver of the statute of limitations for class members pending the resolution of the arbitration question now on appeal.[9] As for the pending class-certification motion, the court declines to stay determination, although it is not committed to an expedited resolution of that dispute.[10]

6. Plaintiff's counsel did not suggest that delay for the class would separately cause harm. Also we note that defendant has agreed to waive the running of the statute of limitations for all class members for the period during which the arbitration issue is pending. (*See* Def.'s Stay Mem. of Law at 3).

7. As we understand the matter, the only basis for the District Court's denial of arbitration is that it must be a non-class individual proceeding. If a class were not certified here, that rationale would no longer apply.

8. We note that defendant has declined to produce documents in this case, apparently in anticipation of a stay until resolution of the arbitration question, but that plaintiff has obtained a quantity of relevant documents produced by Ernst & Young in a parallel California lawsuit.

9. From oral argument we understand that defendant's initial appellate brief is due some time in April, but with a fairly loose schedule for subsequent briefing. We are not certain that the circuit court will grant a tighter schedule if asked, but defendant must make that request as the cost of its stay.

10. In the event that the court certifies a class and the appeal is still pending, defendant will be free to seek a stay of implementation of that order.